UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABIGAIL SCHWARTZ, Individually on Behalf Of Herself and On Behalf of All Others Similarly Situated, | ) ) ) ) Civil Action No.05CV2931(WHP) |
| Plaintiff, | )           "ECF Case" ) |
| | ) **CLASS ACTION** |
| v. | ) **COMPLAINT** ) |
| THE THOMSON CORPORATION, | ) ) |
| and | ) ) |
| THOMSON LEGAL & REGULATORY, INC., | ) ) |
| Defendant. | ) **JURY TRIAL DEMANDED** ) |

## NATURE OF THE ACTION

1. Plaintiff Abigail Schwartz brings this class action complaint individually on behalf of herself and on behalf of all similarly situated consumers of Defendant The Thomson Corporation's "BarBri" legal bar examination preparation courses. BarBri, owned and operated by The Thomson Corporation and its subsidiary, Thomson Legal & Regulatory, Inc., is the leading provider of bar examination preparation courses in the United States. Although the bar examinations in nearly every state in the country consist of at least two discrete parts– a uniform test on various law school subjects (known as the MultiState Bar Exam or "MBE"), and an examination that differs from state to state and that is based on selected topics specific to a particular state's examination– BarBri ties its examination preparation coursework in such a manner that a prospective student who wishes to purchase a BarBri bar examination preparation course for a particular state's specific examination must also purchase from BarBri a preparation course for the MBE. Thus, although a number of providers exist that sell preparation courses just for the MBE, BarBri's tying arrangement stifles

competition from these competing providers, and forces students to pay supra-competitive prices for their bar examination preparation courses. Plaintiff, therefore, brings this action under the federal Sherman and Clayton Acts, New York's Donelly Act, and the common law of unjust enrichment to seek monetary and equitable relief on behalf of herself and all other similarly situated purchasers of Defendants' BarBri bar examination preparation courses during the Class Period (as defined in paragraph 24 below).

## JURISDICTION AND VENUE

2. Count I of this Complaint is brought pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1, and seeks monetary and equitable relief as redress for Defendants' alleged tying of MBE and state specific bar examination preparation courses. This Court, therefore, has subject matter jurisdiction over this Count pursuant to 28 U.S.C. § 1331.

3. Count II of this Complaint is brought pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and seeks monetary and equitable relief as redress for Defendants' unlawful monopoly leveraging of their monopoly market power in the market for preparation courses for the state specific portion of the bar examination to obtain or attempt to obtain a monopoly in the separate market for MultiState Bar Exam preparation courses. This Court, therefore, has subject matter jurisdiction over this Count pursuant to 28 U.S.C. § 1331.

4. Count III of this Complaint is brought pursuant to New York's Donnelly Act, N.Y GBL § 340 et. seq., on behalf of a subclass of those students who subscribed to Defendants' BarBri coursework in New York during the Class Period. Because the facts and legal claims underlying this count arise from the same common nucleus of operative facts as Counts I and II of this Complaint, this Court has subject matter jurisdiction over this count of the complaint pursuant to 28

U.S.C. § 1367.

5. Count IV of the Complaint is brought pursuant to the common law of unjust enrichment, and seeks, *inter alia*, disgorgement of Defendants' ill-gotten gains. Because the facts and legal claims underlying this count arise from the same common nucleus of operative facts as Counts I and II of this Complaint, this Court has subject matter jurisdiction over this count of the complaint pursuant to 28 U.S.C. § 1367.

6. Plaintiff Abigail Schwartz contracted for and attended Defendants' BarBri bar examination preparation course for the New York bar examination. Further, Defendants routinely advertise, offer for sale, sell, and provide their BarBri bar examination preparation courses within this judicial district. Venue in this Judicial District is, therefore, proper.

## PARTIES

7. Plaintiff Abigail Schwartz is a resident of New York. During the Class Period (as defined in paragraph 24 below), Plaintiff paid for and attended Defendants' BarBri bar examination preparation course, and eventually sat for the New York bar examination. Due to the manner in which Defendants unlawfully tie their BarBri preparation course, Plaintiff was forced to purchase from Defendants *both* a preparation course for the MBE exam *and* a preparation course for the New York state examination. Plaintiff now brings this action in individually on behalf of herself, and on behalf of all other similarly situated purchasers of BarBri bar examination preparation courses.

8. Defendant The Thomson Corporation is a corporation organized under the Business Corporations Act of Ontario, Canada. Its subsidiary, co-defendant Thomson Legal & Regulatory, Inc., is a corporation organized under the laws of the State of Minnesota. Throughout this complaint, unless stated otherwise, the terms "Thomson" or "Defendant" refer to both The Thomson

Corporation and Thomson Legal & Regulatory, Inc., collectively. Defendant has its principal place of business in Metro Center, One Station Place, Stamford, Connecticut 06902. Defendant owns and operates the BarBri bar examination preparation course, which is the largest such preparation course in the country. At all times relevant, any anticompetitive conduct that was carried out by Thomson Legal & Regulatory, Inc. was done at the direction and under the control of its parent, The Thomson Corporation.

## **RELEVANT MARKETS AND DEFENDANT'S MARKET POWER THEREIN**

9.  To the extent necessary, for purposes of this Complaint, there are two relevant product markets. The first relevant product market is the United States market for preparation courses for the MultiState Bar Exam. Preparation courses for the MultiState Bar Exam comprise a discrete relevant product market in that consumers and providers recognize it as such, and in that there is a separate consumer demand for such courses. A number of providers offer courses that prepare students for just the MultiState Bar Exam. Further, students separately study for the MultiState Bar Exam portion of their bar exams as this is a discrete portion of the exam that is administered on a different day than the rest of the bar examination. Moreover, students and states place a different and distinct emphasis on the MultiState Bar Exam than they do on the state specific portion of the bar examination because in many jurisdictions achieving a particular score on the MultiState Bar Exam is a prerequisite to passing that state's bar examination. In yet other jurisdictions, achievement of a minimum score on the MultiState Bar Exam guarantees passage of the state's overall bar examination without resort to the score achieved by the student on the state portion of the bar examination. In addition, recognition of the MultiState Bar Exam as a discrete and distinct component for which there is a separate preparation course market is also evidenced by the fact that

a number of states do not require retesting of the MultiState Bar Exam once a student has successfully sat for the MultiState Bar Exam in another jurisdiction and/or in a previous year.

10. Whereas the state specific examination of a state's bar examination varies from state to state and from year to year, the MultiState Bar Exam is identical in any given sitting in every state in which it is administered. Further, while the subject matters tested in the state-specific portion of the bar examination may change from year to year, the MultiState Bar Exam is always limited to the same law school subjects; namely, property, criminal law and procedure, evidence, constitutional law, contracts, and torts. The state specific subjects that may be tested in any given bar examination vary, and have included such diverse subjects as corporations, partnerships, wills trusts and estates, negotiable instruments, and/or state constitutional law, among others. Thus, it is self-evident that a preparation course for the MultiState Bar Exam is insufficient and inadequate to prepare a student for the state-specific portion of a state's bar examination, and vice-versa. A separate and distinct market, therefore, exists for courses that prepare students to take the MultiState Bar Exam.

11. Although Defendant, through its BarBri preparation courses, is the dominant provider of preparation courses for the MultiState Bar Exam, it does face competitors in this market. A number of outfits exist that separately provide preparation courses for the MultiState Bar Exam. These providers include: PMBR, AmeriBar Bar Review's PLI MultiState Bar Review Course, Celebration Bar Review, and AdaptiBar's MBE Bar Review Course, among others. Nevertheless, despite the presence of these competing providers of MultiState Bar Exam preparation courses, Defendant's practice of tying the purchase of its state specific exam preparation courses to the student's purchase of a BarBri MultiState Bar Exam preparation course from Defendant stifles competition in the market for MultiState Bar Exam preparation courses, and allows Defendant to

charge supra-competitive prices for its BarBri bar exam preparation courses.

12. For purposes of this complaint, the second relevant product market is the market for preparation courses for the state specific portion of the bar examination. For the reasons detailed in paragraphs 9-11 herein, the market for state specific preparation courses is a distinct and separate market than the market for MultiState Bar Exam preparation courses.

13. In this second relevant market for preparation courses for the state specific portion of the bar examination, Defendant possesses a virtual monopoly. In most states, Defendant is the sole provider of preparation courses for the state specific portion of that bar examination. In a few selected states, other providers exist that supply preparation courses for the state specific portion of the exam, but their market share is so low relative to Defendant's market share in this second market, that they do not pose price-constraining competition to Defendant's provision of preparation courses for the state-specific portions of the bar examination. Upon information and belief, Defendant possesses, and during the Class Period has possessed, well in excess of an 80 percent share of the market for preparation courses for the state-specific portion of the bar exam. Thus, in this market, Defendant has the requisite market power to exclude competition, restrict output, and raise prices.

14. There are high barriers to entry to the market for preparation courses for the state specific portion of the bar exam. Given the commitment of time and effort required to sit for the bar exam, students contemplating sitting for a bar exam are unlikely to entrust their preparation to new entrants who cannot show a proven track record of success by previous students. This market reality means that new entrants are unlikely to be able to readily challenge the market power of already existing bar exam preparation providers, such as Defendant's BarBri.

## DEFENDANT'S UNLAWFUL AND ANTICOMPETITIVE CONDUCT

15. Because as already described herein, there are separate product markets for preparation courses for the MultiState Bar Exam and for the state-specific portion of the bar exam, in a truly competitive market that was devoid of Defendant's wrongdoing, a consumer should be able to separately purchase from the provider of his choice a preparation course for the MultiState Bar Exam and a preparation course for the state-specific portion of the bar exam. Similarly, in a truly competitive market that were devoid of Defendant's wrongdoing, a student who had no need to take the MultiState Bar Exam (because, for example, he had already successfully passed the MBE in a prior sitting) should be able to purchase and pay for just a preparation course for the state specific portion of the bar exam. Defendant's unlawful and anticompetitive conduct, however, precludes consumers from effectively availing themselves of these competitive alternatives.

16. Rather than separately selling its bar preparation courses for the MultiState Bar Exam and the state specific portion of the bar exam on a stand-alone basis, Defendant's BarBri courses are only offered to consumers on the condition that students who purchase BarBri's preparation course for the state specific portion of the bar exam, also purchase Defendant's BarBri's preparation course for the MultiState Bar Exam. In this manner, Defendant has used its market power in the market for preparation courses for the state specific portion of the bar exam to unlawfully tie the sale of such a course to the consumer's purchase of a preparation course for the MultiState Bar Exam from BarBri.

17. By way of example, Defendant's current contract for its preparation courses for students wishing to sit for the bar exam in California requires students to pay a $2,950.00 for the BarBri course, which includes fees for both the preparation course for the MultiState Bar Exam and for the

California-specific state portion of the exam. A student who is interested in enrolling only in BarBri's preparation course for the California-specific portion of the bar exam (either because he would like to take the MultiState Bar Exam preparation course from another provider, or because he is already an attorney admitted in another jurisdiction who is not required to sit anew for the MultiState Bar Exam in order to be admitted in California) would still be required to pay the entire $2,950.00 fee for both courses (even though he only wishes to purchase one course from BarBri). A true and correct copy of the BarBri enrollment form for California is attached hereto as Exhibit A.

## ANTICOMPETITIVE EFFECTS ON CONSUMERS

18. Defendant's unlawful tying conduct has stifled competition and forced consumers to pay supra-competitive prices for their bar examination preparation courses.

19. Absent Defendant's unlawful tying of its MultiState Bar Exam preparation course and its state specific bar exam preparation course, a consumer would be able to exercise a competitive choice in deciding which MultiState Bar Exam preparation course to purchase. Instead, due to Defendant's anticompetitive conduct, a consumer of BarBri's state specific bar examination preparation course has no choice but to also purchase BarBri's MultiState Bar Exam preparation course. Because BarBri's MultiState Bar Exam preparation course is thereby insulated from effective competition, Defendant is able to and does charge consumers supra-competitive prices for its BarBri courses.

## PRIOR LITIGATION ADDRESSING BARBRI'S UNLAWFUL CONDUCT

20. Plaintiff does not bring this action on a clean slate. Rather, in November 1992, Multistate Legal Studies, Inc., the provider of PMBR, a competing supplier of preparation courses

for the MultiState Bar Exam filed an antitrust lawsuit in the United States District Court for the District of Colorado against Harcourt Brace Jovanovich Legal Professional Publications, Inc., the then owner and provider of BarBri's bar examination preparation courses. PMBR alleged, *inter alia*, that BarBri unlawfully tied its sales of full-service bar examination preparation courses to the sales of its MultiState Bar Exam preparation course.

  21. In March 1994, the district court entered summary judgment in favor of Harcourt Brace Jovanovich. On appeal, however, the United States Court of Appeals for the Tenth Circuit reversed. In a reported and published opinion captioned as *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal Professional Publications, Inc.*, 63 F.3d 1540 (10th Cir. 1995), the Tenth Circuit found that the plaintiff, PMBR, had adduced sufficient evidence that there existed a separate and distinct relevant product market for MultiState Bar Exam preparation courses, and that BarBri unlawfully tied its sale of full service bar examination courses to the sale of its MultiState Bar Exam preparation courses. Thus, on or about August 29, 1995, the Tenth Circuit reversed and remanded the case to the district court for further proceedings, including a trial on plaintiff's claims.

  22. On or about February 16, 1996, the district court received and entered the mandate from the Tenth Circuit. Approximately two months later, on or about April 29, 1996, BarBri entered into a settlement agreement with PMBR to resolve and dispose of PMBR's antitrust lawsuit. Pursuant to the terms of the settlement agreement between the parties, the settlement stipulation containing the terms of the settlement agreement was to be filed and kept under seal. The district court entered the settlement stipulation on or about May 2, 1996, and it has remained under seal ever since.

  23. Although PMBR successfully sued and settled its own antitrust claims against BarBri, the tying conduct giving rise to that complaint is still being implemented by BarBri today, and was

implemented by BarBri throughout the class period. Thus, while PMBR sued to recover for its own losses as an ousted competitor, Plaintiff hereby files the instant class action complaint to seek redress for the injury to the business and property that consumers of BarBri bar examination preparation courses sustained as a direct result of Defendant's unlawful conduct.

## CLASS ACTION ALLEGATIONS

24. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of herself and on behalf of all other similarly situated consumers who, during the period March 20, 2001 to the present ("the Class Period") purchased a BarBri bar examination preparation course. Excluded from the class are all those consumers who purchased a BarBri bar examination course for the states of Indiana, Louisiana, and Washington, as such states' bar examinations do not use the MultiState Bar Exam. Similarly excluded from the Class are all judicial officers and their staff, as well as all governmental entities.

25. The number of putative class members is sufficiently large, such that joinder of all individual class members would be impracticable, if not impossible. Although the precise number of class members is not presently known to Plaintiff, based on the sales volumes and prevalence of BarBri courses during the Class Period, it is reasonable to assume that the number of individual class members is at least in the tens of thousands.

26. Plaintiff's claims are typical of the claims of the class. Specifically, Plaintiff claims that by tying the purchase of a BarBri preparation course for the state-specific portion of the bar exam to the consumer's purchase of BarBri's preparation course for the MultiState Bar Exam, Defendant has injured Plaintiff and the class members in their business and/or property, in violation of the federal and state antitrust laws, and in violation of the common law.

27. Common questions of fact and law exist in this litigation, and these common questions affecting the class as a whole predominate over any individual questions that may affect only individual class members. Among these common questions of fact or law are the following:

   a. the definition of the relevant market(s);

   b. Defendant's market power within these relevant market(s);

   c. Whether Defendant unlawfully restrained competition in any or all of these relevant markets;

   d. Whether any unlawful restriction of competition caused by Defendant caused injury to the business or property of Plaintiff and the class members;

   e. The extent of any such injury;

   f. The appropriate remedy for any such injury.

28. Plaintiff is an adequate representative of the interests of the absent class members in this litigation. During the Class Period, Plaintiff purchased a BarBri bar examination preparation course. Plaintiff has retained competent counsel experienced in antitrust and class action litigation to vigorously prosecute and litigate this action on behalf of the putative class members.

29. This action is manageable as a class action. The identity of all class members, or of a significant majority, is ascertainable, as each class member executed an enrollment form and contract to purchase and/or attend BarBri courses. Prosecuting this action on an individual, as opposed to a classwide, basis would risk the prospect of conflicting findings and adjudications with respect to the rights and obligations of the parties. Further, the average overall amount of monetary injury sustained by each individual class members is likely to be too small relative to the costs of individual litigation of this action so that classwide litigation effectively provides the only available

means for individual class members to seek judicial redress for their injuries.

## COUNT I

## (UNLAWFUL TYING OR BUNDLING IN VIOLATION OF 15 U.S.C. § 1)

30. Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if fully restated herein.

31. Through its BarBri bar exam preparation courses, Defendant has monopoly market power in the U.S. market for preparation courses for the state specific portion of the bar examination. In any event, Defendant has sufficient market power in this relevant market to coerce consumers of BarBri's preparation course for the state specific portion of the bar exam to also purchase their MultiState Bar Exam preparation course from BarBri, even if these same consumers would have preferred to purchase not to purchase a MultiState Bar Exam preparation course at all, or to do so from a different provider.

32. There are providers of MultiState Bar Exam preparation courses, other than Defendant's BarBri, that, but for Defendant's anticompetitive conduct, consumers could turn to as competitive alternatives for their MultiState Bar Exam preparation course needs.

33. During the Class Period and continuing until the present, Defendant has rigged the BarBri bar examination courses so that a consumer wishing to purchase a BarBri preparation course for the state specific portion of his or her bar examination must also purchase BarBri's MultiState Bar Exam preparation course.

34. As a direct and proximate result of Defendant's anticompetitive actions, consumers of BarBri's bar examination preparation course for the state specific portion of the bar exam have been injured in their business and/or property by: being deprived of a competitive choice of providers of

MultiState Bar Exam preparation courses; being denied the ability to purchase MultiState Bar Exam preparation courses other than BarBri, or not at all; and, being charged supra-competitive prices for their bar examination preparation courses.

35.  Defendant's unlawful bundling or tying of its BarBri preparation course for the state specific portion of the bar examination to the purchase of BarBri's MultiState Exam preparation course is unlawful per se under the antitrust laws.   Alternatively, Defendant's unlawful bundling or tying is unlawful under the antitrust rule of reason because the anticompetitive effects of this conduct are not outweighed by pro-competitive considerations.

## COUNT II

### (UNLAWFUL LEVERAGING OF MONOPOLY IN MARKET FOR PREPARATION COURSES FOR STATE SPECIFIC PORTION OF BAR EXAMINATION TO ATTEMPT TO AND/OR ACTUALLY MONOPOLIZE SEPARATE MARKET FOR MULTISTATE BAR EXAM PREPARATION COURSE IN VIOLATION OF 15 U.S.C. § 2)

36.  Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if fully restated herein.

37.  The foregoing allegations amount to unlawful monopoly leveraging in violation of Section 2 of the Sherman Act, wherein Defendant has leveraged its monopoly market power, however acquired, in the market for preparation courses for the state specific portion of the bar examination, in an attempt at and/or actual monopolization of the separate market for MultiState Bar Exam preparation courses.

38.  The foregoing conduct has injured Plaintiff and the class members in their business and/or property by unlawfully thwarting competition in the market for MultiState Bar Exam preparation courses and by forcing consumers, like Plaintiff and the class members, to pay supra-competitive prices for their bar examination preparation courses.

39.  To the extent that Defendant has not yet achieved an actual monopoly in the leveraged market for MultiState Bar Exam preparation courses, if left unrestrained, Defendant's conduct is likely to lead to Defendant achieving such a monopoly in the imminent future.

## COUNT III

### (VIOLATION OF NEW YORK'S DONNELLY ACT (N.Y. GBL, § 340 et. seq.)– ON BEHALF OF A CLASS OF NEW YORK PURCHASERS ONLY)

40.  Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if fully restated herein.

41.  Through the conduct alleged herein, Defendant has violated New York's Donnelly Act, N.Y. GBL § 340 et. seq.

42.   Defendant's violations of the Donnelly Act have injured Plaintiff and those class members who purchased BarBri's preparation courses for the New York bar examination by, *inter alia*, suppressing competition, and by forcing consumers, like Plaintiff and the class members, to pay supra-competitive prices for their courses.

## COUNT IV

### (COMMON LAW UNJUST ENRICHMENT)

43.  Plaintiff hereby incorporates by reference all of the allegations of this complaint with the same force and effect as if fully restated herein.

44.  Plaintiff and the class members conveyed benefits onto Defendant in the form of money paid and business given to Defendant for bar examination courses.

45.  Defendant appreciated the granting of these benefits, as it repeatedly touted in the media and public statements how it had achieved heretofore unmatched and unprecedented sales figures for its BarBri courses.

46. Given Defendant's anticompetitive and unlawful conduct, Defendant has been unjustly enriched at the expense of Plaintiff and the class members, and it would, therefore, be inequitable to let Defendant retain these benefits that it obtained from Plaintiff and the class members.

47. Plaintiff and the class members are, therefore, entitled to disgorgement of Defendant's ill-gotten gains and restitution of money paid by them to Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order from the Court as follows:

1. Entering Judgment for Plaintiff and the class and against Defendants on all counts;

2. Certifying this action as a class action on behalf of the class defined herein, and designating Plaintiff and her counsel as class representative and class counsel, respectively;

3. Directing that notice of this action be disseminated to the absent class members at Defendants' expense;

4. Awarding Plaintiff and the class members their compensatory and statutory money damages, including trebled damages and punitive damages where appropriate;

5. Awarding Plaintiff's counsel their reasonable attorneys' fees, expenses, and costs of suit;

6. Declaring Defendants' actions to be violations of the federal and state antitrust laws, the common law, and enjoining Defendants from carrying on such conduct;

7. Requiring Defendants to disgorge their ill-gotten gains, and awarding the proceeds of this disgorgement to Plaintiff and the class members;

8. Requiring Defendants to provide restitution to Plaintiff and the class members of moneys paid by Plaintiff and the class members to Defendants;

9. Requiring Defendants to establish a common fund from which compensation can be made to Plaintiff and the class members, and from which Plaintiff's counsel may recover their reasonable attorneys' fees, expenses, and costs of suit;

10. Awarding such other relief as this Court deems just and appropriate.

**<u>JURY TRIAL DEMAND</u>**

Plaintiff demands a trial by jury on all counts so triable.

Dated: March 16, 2005

        MURRAY, FRANK & SAILER, LLP

        By: _____/s/_____
        Brian P. Murray (BM 9954)
        Eric J. Belfi (EB 8895)
        Aaron D. Patton (AP 6334)
        275 Madison Avenue, Suite 801
        New York, NY 10016-1101
        Tel:   (212) 682-1818
        Fax:  (212) 682-1892

        THE KATRIEL LAW FIRM, P.C.
        Roy A. Katriel
        1101 30th Street, NW
        Suite 500
        Washington, DC 20007
        Tel:   (202) 625-4342
        Fax:  (202) 625-6774

        Attorneys for Plaintiff