## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY S. PARK, INDIVIDUALLY ON BEHALF OF HIMSELF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| PLAINTIFF | CASE NO. 05 CIV. 2931 (WHP) |
| V. | |
| THE THOMSON CORPORATION and THOMSON LEGAL AND REGULATORY, INC., | JUDGE WILLIAM H. PAULEY III |
| DEFENDANTS | |

## BONNER WALSH'S OBJECTION TO PROPOSED SETTLEMENT, NOTICE OF INTENTION TO APPEAR, AND REQUEST TO SPEAK AT THE HEARING

To The Honorable Judge William H. Pauley III:

Comes Now Bonner Walsh ("Objector"), and files this Objection to the Proposed Settlement, Notice of Intent to Appear, and Request to Speak at the Hearing and would show as follows:

### 1.  Summary of Objections

Objector raises the following objections to the settlement, discussed more fully below:

> 1.1    The class definition does not comply with Rule 23 or due process.  The Court
>
> would abuse its discretion and deny class members their due process rights if it
>
> were to certify this settlement class because (1) there is no precise, objective or
>
> presently ascertainable way to determine who "paid for" the product, and (2) the
>
> settlement fails to define or identify "qualifying" BAR/BRI bar review courses.

> 1.2    The court would abuse its discretion as a matter of law by approving a settlement
>
> with a *cy pres* award to the BAR/BRI Public Interest Law Fund instead of awarding

those funds to class members who make claims. *See, Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007).

1.3    The settlement is *per se* unfair and unreasonable because it reduces the money to be paid to class members who have a cognizable claim and transfers it to class members who reside in states without an MBE exam and who Plaintiffs admit do not have a cognizable claim.

1.4    Forcing class members to file claims is not fair, reasonable, or adequate. Instead of a class as requested in Plaintiff's live Complaint, the parties altered the definition of the class so that class members would be forced to file claims, ensuring that many class members will never receive relief.

1.5    The "capping" of claim payments is unreasonable.

## 2.  Party Status

Objector hereby asserts his status as a party to this proceeding under the U.S. Supreme Court's opinion in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Objector asserts his rights as a party for all purposes, including, but not limited to, the right to: object to the settlement, appeal a decision approving the settlement, receive notice of all hearings, receive copies of all filings by the Settling Parties, and participate as a party at all hearings and conferences with the Court in this case. The name, address, statement, and signature of the Objector are as follows:

Name:        Bonner Walsh

Address:     6149 Anita St., Dallas TX 75214

Statement:   Under penalty of perjury of the laws of the United States, I declare that I am a person who has paid the entire cost of a BAR/BRI bar review course in the United States during the period March 15, 2001 to January 4, 2008, inclusive

(the "Class Period"). In addition, I received a notice of settlement in this case from the Park BarBri Settlement Administrator identifying me as a class member and identifying me as 'Claimant ID # 00501866." Exhibit A is a true and correct copy of the cover page for that notice.

Signature: _____   Dated: 2/29/2008

## 3.  Notice of Intention to Appear

Jeffrey L. Weinstein, an attorney licensed in the State of Texas and subject to permission by the Court, and Robert E. Margulies, Southern District of New York Counsel, intend to appear on behalf of objector at the hearing.

## 4.  Request to Speak at the Hearing

Objector requests that his Counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

## 5.  Objections to Settlement

### 5.1 The class definition does not comply with Rule 23 or due process

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, because the class definition fails to satisfy Rule 23 and due process requirements. Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled to the "best notice practicable." To accomplish those goals, Rule 23 and due process require that the definition be precise, objective and presently ascertainable. MANUAL FOR COMPLEX LITIGATION 4th, p. 270 ("For example, the class may consist of those persons and companies that purchased specified products ... from the defendants during a specified period."). The class identified in

Plaintiff's 2nd Amended Complaint, all persons who "purchased a BarBri bar examination preparation course," meets that test. Plaintiff's 2nd Amended Complaint, p. 10.

However, the parties changed the definition of the class for settlement purposes to:

> All individuals, law firms, or other Persons who have paid the entire cost of one or more qualifying BAR/BRI bar review courses in the United States during the period March 15, 2001 to January 4, 2008, inclusive (the "Class Period").

Settlement Agreement p. 6. This new definition is inadequate because there is no precise, objective and presently ascertainable way to determine who is in the class, for two independent reasons: (1) "qualifying" courses are not defined or identified, and (2) "paid" is inherently ambiguous in this context.

### 5.1.1 The settlement agreement fails to define what constitutes a "qualifying" BAR/BRI bar review courses

First, instead of using the phrase "a BarBri bar examination preparation course," like in the Second Amended Petition, the settlement definition is limited to a "qualifying BAR/BRI bar review course." The insertion of the term "qualifying" means that not all BarBri bar review courses are covered. The class definition does not define which BarBri bar review courses are "qualifying BAR/BRI bar review courses." The "qualifications" are clearly not location or time qualifications, because the sentence already includes those limitations. The added term "qualifying" must refer to something else or it would be superfluous. Moreover, the addition of the term "qualifying" to Plaintiff's proposed definition must signify some change.

Since the class definition does not define "qualifying," the remainder of the settlement agreement would need to define which BarBri bar review courses are "qualifying BAR/BRI bar review courses." However, no such definition exists in the settlement agreement. Indeed, nothing in the settlement agreement even remotely addresses which

BarBri bar review courses are "qualifying BAR/BRI bar review courses." Nor is there any indication which courses taken in the United States during the period March 15, 2001 to January 4, 2008 would *not* qualify.

Plaintiff's 2nd Amended Complaint offers a clue as to what the parties may have intended. For the proposed class, the Complaint limits the "qualifying" bar exams:

> Excluded from the class are all those consumers who purchased a BarBri bar examination course for the states of Indiana, Louisiana, and Washington, as such states' bar examinations do not use the MultiState Bar Exam.

Plaintiff's Second Amended Complaint at 10. Perhaps that is what the parties intended here. However, nothing in the Settlement Agreement resolves the ambiguity. Thus, a critical component of the settlement – the definition of the class – remains undefined.

### 5.1.2    The "paid the entire cost of the course" provision is not precise, objective, or presently ascertainable

Second, there is no precise, objective and presently ascertainable way to determine who "paid the entire cost" of the course. What constitutes paying for the entire cost of a bar review course? The settlement agreement does not provide any definition or guidance. For instance, who, if anyone, would be the class member in each of the following factual scenarios?

a. The student paid BarBri, but the student's law firm reimbursed the student for the full cost.

b. The student paid BarBri, but she was married and lived in a community property state, like Texas, and paid the cost out of a marital joint account. Did she pay the entire cost or did her husband pay half the cost?

c.  The student paid BarBri, but used a credit card that was held by her and her husband jointly.

d.  The student paid BarBri with his own credit card, but his mother paid the entire balance on the card.

e.  The student's mother gave him $30,000 that year for law education costs, the student commingled that money with his own funds so that the money was no longer identifiable, and then he paid BarBri.

f.  The student's mother gave him $5,000 as a graduation present to pay for his BarBri class.

Reasonable minds could differ for each of these examples as to whether the student, law firm, mother, or neither is the member of the class.

Because the class definition is not precise, objective or presently ascertainable, the Court would abuse its discretion and deny class members their due process rights if it were to certify this settlement class.

## 5.2 Giving settlement monies to a third party charity rather than class members is an illegal application of *cy pres* and would be an abuse of discretion.

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, because it provides that residual monies will be paid to a third party charity, the BarBri Public Interest Law Fund, rather than class members who make claims.

> If after payment in full of all Approved Claims, fees, costs and expenses approved by the Court and contemplated by § 3.3, there is any money remaining in the Settlement Fund, such money shall fund a cy pres distribution to the BARBRI Public Interest Law Fund to be administered by the American Bar Association.

Settlement Agreement para. 4.3, p. 17.  The Court would abuse its discretion if it were to approve the settlement with this provision.

The Second Circuit has strongly hinted that a district court would abuse its discretion in approving a settlement of an antitrust claim by giving unclaimed funds to third party charities under the *cy pres* doctrine rather than class members who did file claims. *See, Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007).  That is the very issue here:  whether the court has the discretion to approve a *cy pres* settlement in an antitrust case when the money could, instead, be paid to class members who did make a claim.  As a matter of law, approval of this settlement would constitute an abuse of discretion.

The American Law Institute (ALI) is in the process of adopting a prohibition against this very type of provision in class action settlements.  ALI is preparing its "Principles of the Law of Aggregate Litigation," and its Discussion Draft No. 2, dated April 6, 2007, would clearly prohibit this abuse:

> § 3.07 Cy Pres Settlements ...
>
> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable.

*Id.* § 3.07 (b), at 237-238.  Of course, in this case the extra money could easily be given to claimants for no additional costs by simply changing the disbursement formula to eliminate the cap and send one larger check to claimants.  The ALI draft reasons:

> Assuming that class members can be reasonably identified and that direct distributions make economic sense, funds may remain because some class members could not be identified or chose not to file claims. Under this Section, assuming that further distributions to the previously identified

> class members would be economically viable, that approach is preferable
> to cy pres distributions.

*Id.* at 239.  Even if giving this money to claimants would somehow over-compensate them,

the ALI draft finds that that would be preferable to giving the money to third parties:

> [T]his Section takes the view that distributions to class members better
> approximate the goals of the substantive laws than distributions to third
> parties that were not directly injured by the defendant's conduct.

*Id.*  Although the ALI has not finally adopted that document, the reasoning is sound, as

found by the Second Circuit in *Masters*, and this Court can and should stop this class action

abuse now by disapproving the settlement.

## 5.3 The settlement unfairly reduces the amounts due to class members with a legitimate claim by allowing class members with no claim share in the proceeds

The settlement is not fair, reasonable, or adequate, and Objector objects to the

settlement, because it reduces the money paid to class members who have a cognizable claim

– those from states that have an MBE component – in order to pay class members that have

no cognizable claim – those from states that do not have an MBE component.

Plaintiff's 2nd Amended Complaint clearly distinguishes two subclasses in the

settlement class.   Plaintiff requested a class that excluded consumers from Indiana,

Louisiana, and Washington:

> Excluded from the class are all those consumers who purchased a BarBri
> bar examination course for the states of Indiana, Louisiana, and
> Washington, as such states' bar examinations do not use the MultiState
> Bar Exam.

Plaintiff's Second Amended Complaint at 10.  Since Plaintiff's claim is based on the illegal

tying of the MBE and state-specific bar review courses, consumers in states where there is no

MBE exam would not have a cognizable claim against Defendants.    Thus, Plaintiffs

rightfully excluded them from their proposed class.  However, the settlement class *includes* consumers from those non-MBE states because the exclusion in the Complaint is not part of the settlement definition.

The inclusion of consumers from non-MBE states undeniably reduces the amount of money that class members in MBE states will receive.  The settlement payment is pro rata, so an increase in class members reduces the amount paid to the original class members:

> The exact amount of the payment to each Authorized Claimant will be equal to (a) the balance of the Settlement Fund remaining after payment of all fees, costs and expenses approved by the Court and contemplated by § 3.3 (other than Claims); (b) divided by the number of Approved Claims ...

Settlement Agreement p. 16.  The numerator of the equation – the balance of the Settlement Fund – remains constant regardless of the number of claimants.  Thus, for each additional claimant, the denominator gets bigger and the amount of the payment to each class member is reduced.  A settlement that adds class members with no cognizable claim and reduces the amount of recovery for class members with a cognizable claim as a result is *per se* unfair, unreasonable, and inadequate.

In addition, a conflict exists between class members from states with the MBE exam and class members from states without the MBE exam.  To comply with Rule 23 and due process requirements, a separate class representative and class counsel should have represented the competing interests of those two subclasses.  As such, the Plaintiff and Class Counsel are not adequate representatives.

**5.4 The claim-filing requirement is unreasonable.**

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, because it requires class members to file a claim to receive any benefits.  Why

should class members need to file a claim at all?  All class members are entitled to exactly the same relief.  The mere fact of being in the class entitles them to the same relief as every other class member.

Indeed, had the parties used the definition Plaintiff used in the Complaint, all persons who "purchased" the BarBri product, then no claims would be necessary.  Defendant would simply identify all class members from its computer files and mail them a check in the appropriate amount.  Simple, easy to administer, and in the class's best interest because there is no need to file a claim for money to which they are already entitled.

If such an easy definition is available, and that is exactly what Plaintiffs pled for, why would the parties change the definition for the settlement?  Several possible rationales exist, but only one withstands scrutiny.  The only rationale that is consistent with the outcome is that the parties changed to the new definition to reduce the number of class members who would actually receive the monetary compensation.  Unless the settling parties can identify a different rationale that withstands scrutiny, the Court should assume that the parties changed the definition with the purpose of reducing the number of claims payments to class members. This type of collusion at the expense of class members should not be condoned by the Court.


## 5.5 The cap is unreasonable.

The settlement is not fair, reasonable, or adequate, and Objectors object to the settlement, because there is a "cap" on the amount an individual class member may receive. The Settlement provides that a claim may not exceed $40, even if there is pro rata money left over in the settlement fund to pay claimants over $40.  Settlement Agreement p. 16.  There is no evidence or logic to justify the cap.  Nor is there any legal support.  This is an antitrust action, where state and federal statutes permit recovery of actual damages *plus* trebled

damages.  Thus, even if there were evidence that class members' individual actual damages

did not exceed $40, they would still be entitled to recoup more than $40.

Wherefore, Objector prays that the Court disapprove the proposed settlement and grant Objector

such other and further relief as to which Objector may be entitled.

Respectfully submitted,

**ROBERT E. MARGULIES, ESQ.**

**MARGULIES WIND**
A Professional Corporation
Harborside Plaza 10
3 Second Street - Suite 1201
Jersey City, NJ 07311
201-333-0400
201-333-1110-fax

**JEFFREY L. WEINSTEIN**
Texas State Bar No. 21096450

**JEFFREY L. WEINSTEIN, P.C.**
518 East Tyler Street
Athens, TX   75751
903/677-5333
903/677-3657 – facsimile
***Subject to Court Approval Pro Hac Vice***

**ATTORNEYS FOR OBJECTOR**

**Attachment A**

Park BAR BRI Settlement Administrator
c/o Complete Claim Solutions, LLC
P.O. Box 24788
West Palm Beach, FL 33416

PRESORTED
FIRST-CLASS MAIL
US POSTAGE PAID
Complete Claim
Solutions, LLC

## IMPORTANT COURT DOCUMENTS



*00501866-060*

J070962
CLAIMANT ID# 00501866
••••••••••••••••••AUTO**3-DIGIT 752
BONNER C WALSH
6149 ANITA ST
DALLAS TX 75214-2612