USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ANTHONY PARK, Individually on
Behalf of Himself and on Behalf of All Others
Similarly Situated,

           Plaintiff,

-against-

THE THOMSON CORPORATION and
THOMSON LEGAL & REGULATORY, INC.,

           Defendants.
------------------------------------X

05 Civ. 2931 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Anthony Park ("Park") brings this putative antitrust class action against Defendants Thomson Corporation and Thomson Legal & Regulatory, Inc. (collectively, "BAR/BRI") under the Sherman Act, for unlawful tying and monopoly leveraging. Plaintiff moves for final approval of the parties' settlement agreement. Plaintiff's attorneys, Roy A. Katriel and Murray, Frank & Sailer LLP (collectively, "Class Counsel"), move for attorneys' fees. For the following reasons, the motion for final approval is granted, and the motion for attorneys' fees, reimbursement of expenses and an incentive award is granted in part.

BACKGROUND

I. Procedural History Prior to Settlement

        Park claims BAR/BRI unlawfully tied its bar review classes for the state-specific portion of the bar exam to the purchase of a review class for the Multistate Bar Examination ("MBE"). The factual background underlying these actions is set forth in greater detail in Park

1

v. Thomson Corp., No. 05 Civ. 2931 (WHP), 2007 WL 119461 (S.D.N.Y. Jan. 11, 2007) (the "January 2007 Memorandum & Order").

In the January 2007 Memorandum & Order, this Court granted Plaintiff's motion for summary judgment in part and denied it in part, and denied BAR/BRI's motion for summary judgment. While the motions for reconsideration were pending, the parties entered into a Stipulation and Settlement Agreement (the "Initial Settlement") on November 30, 2007. On December 7, 2007, the Court granted Park's motion for preliminary approval of the Initial Settlement (the "Preliminary Approval Order"), and certified a class consisting of "all individuals, law firms, or other persons who have paid the entire cost of one or more qualifying BAR/BRI bar review courses in the United States" during the period from March 15, 2001 to January 4, 2008 (the "Class Members").

II. The Initial Settlement

The Initial Settlement required BAR/BRI to pay $13 million plus accrued interest into a settlement fund (the "Fund"), with each Class Member who submits a claim receiving $40 for each course that was purchased. Class Members who are also members of the certified class in Rodriguez v. West Publishing Corp., No. 05 Civ. 3222 (R(MCx)), 2007 WL 2827379 (C.D.Cal. Sept. 10, 2007) (the "Rodriguez Class"), an action alleging other antitrust violations by BAR/BRI, are eligible to collect from both funds, provided that they submit a claim form in each action. Any balance of the Fund remaining after all approved claims, fees, costs and expenses are paid would be used to establish a cy pres fund for lawyers entering public service, to be administered by the American Bar Association. The Initial Settlement also provided that

2

$750,000 of the Fund would be used to cover the costs of notice and administration. BAR/BRI and Park's counsel agreed to split notice and administration costs exceeding $750,000, but less than $1 million, between them. BAR/BRI agreed to pay any such costs exceeding $1 million.

Under the Initial Settlement, BAR/BRI would untie the state-specific and MBE portions of its review courses, allowing students to enroll in either the state-specific or the MBE courses, or both. This injunctive relief sunsets after three years.

III. Notification and Submitted Claims

Pursuant to the notification plan approved by this Court, Park notified roughly 280,000 Class Members by first-class mail. Approximately 53,000 of the notices were undeliverable. Park received 134 opt-out requests and five objections, one of which was withdrawn. Class Counsel received 55,649 completed claim forms, representing a total of 75,271 individual courses. (Declaration of Richard L. Sartory dated June 6, 2008 ("Sartory Decl.") ¶ 7.) Of the completed claim forms, 12,683, representing 18,217 individual courses, were filed by Class Members who are also members of the Rodriguez Class. (Sartory Decl. ¶¶ 13-14.)

Under the terms of the Initial Settlement, only $3.01 million of the $13 million Fund would be paid to Class Members.

IV. The Amended Settlement

On April 1, 2008, this Court held a fairness hearing. Several Class Members objected to the $40 cap for damages, as well as the notion that a far greater amount of the Fund

3

would be destined for a cy pres abyss administered by the American Bar Association. At the hearing, this Court also voiced its concerns that the ethereal, albeit well intentioned, cy pres component of the Initial Settlement would overwhelm the purpose for the lawsuit—payment to the class.

In the wake of the fairness hearing, counsel for the parties demonstrated their prescience by submitting a Stipulation and Amendment to the Stipulation and Settlement Agreement dated July 29, 2008 (the "Amended Settlement"). The Amended Settlement eliminated the $40 cap on damages, and provided that Class Members would receive the entirety of the Fund. Only the residue of uncashed claimants' checks or a surplus resulting from lower than anticipated administration costs would devolve to a cy pres fund. (Amended Settlement at 4.) The Amended Settlement also obviates the need for any Rodriguez class member who submitted a claim form in that case to submit one in this action as well, in order to receive payment. (Amended Settlement at 3-4.) Following final approval, the Class Members will receive notification of the Amended Settlement, and another opportunity to submit a claim form. (Amended Settlement at 4.)

## DISCUSSION

I. Approval of Settlement Amount

A district court must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable. D'Amato v. Deutsche Bank, 235 F.3d 78, 85 (2d Cir. 2001).

A. Negotiations

Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness." In re Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Class Counsel has extensive experience with class actions, and the settlement was the result of extensive negotiations and mediation before the Honorable George C. Pratt, a retired Second Circuit judge. Accordingly, the Court finds the negotiating process was fair, adequate, and reasonable.

B. Settlement

In determining whether a settlement is substantively fair, adequate and reasonable, the Court must consider the following factors: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 465, 456 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).

1. Complexity, Expense and Likely Duration of the Litigation

"[A]ntitrust cases, by their nature, are highly complex." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 122 (2d Cir. 2005). This action, now in its fourth year, involved prolonged fact and expert discovery. Because the Court declined to grant summary judgment fully for either party, absent settlement, the case would proceed to a lengthy and costly trial.

2. Reaction of the Class

The 134 members opting out and five objectors, constitute less than one percent of Class Members, which does not on its own call into question the fairness of the settlement. See Grant v. Bethlehem Steel Corp., 823 F.2d 20, 24 (2d Cir. 1987) (otherwise fair settlement should not be deemed unfair because of opposition by 36% of the total class).

Moreover, two of the five objections need not be given any weight. One, from Shane LaVigne, seeks to limit the scope of the release so as to exclude LaVigne's claims filed in the Central District of California in Stetson v. West Publishing Corp. Because Defendants have agreed to revise the Amended Settlement to include this provision, the objection is moot. Another objection, from Richard E. Schatzel, offers only the conclusory statement that the Amended Settlement is simply not fair. The Amended Settlement largely accommodates the main concerns in the remaining three objections. Accordingly, this Court finds that the reaction by the class is positive on the whole.

3. Stage of Proceedings and Amount of Discovery

The parties' motions for reconsideration concerning their cross-motions for summary judgment were pending before this Court at the time of settlement. Although discovery had been completed when the parties agreed to the Initial Settlement, this Court had

not yet certified the class, requiring class discovery, briefing, and any interlocutory appeal to be completed. In short, the parties will save a great amount of time and expense by settling.

### 4 and 5. Risks of Establishing Liability and Damages

As already noted, this Court denied Plaintiff's summary judgment motion in part and at the time of settlement was reviewing Defendants' motion for reconsideration. The complexity of Plaintiff's claims ipso facto creates uncertainty. Liability is never automatic, and a settlement of $13 million in cash and the injunctive relief represent a significant recovery.

Proving damages in this action would have been extremely complicated and would almost certainly require significant expert testimony and analysis. A trial on these issues would likely be confusing to a jury. Further, a settlement or judgment in Rodriguez v. West Publishing Corp., could have led to a reduction of damages in this case. These factors therefore weigh in favor of the Settlement.

### 6. Risks of Maintaining the Action Through Trial

Absent settlement, the action likely would have been tried, a factor weighing against settlement. In addition, both parties faced uncertainty relating to class certification and Defendants' pending motion for reconsideration.

### 7. Ability of Defendants to Withstand a Greater Judgment

While the multiple suits Defendants faced certainly could have exacerbated the total amount owed if judgment were rendered against them in each action, there is no evidence that Defendants could not have withstood a greater judgment. This factor weighs against the settlement.

### 8 and 9. Range of Reasonableness of Settlement in Light of Best Possible Recovery and Risks of Litigation

While the $13 million settlement is significantly less than the $49 million settlement in <u>Rodriguez</u>, this settlement includes injunctive relief which, while only lasting for three years, is what Plaintiff sought in his complaint, and could give BAR/BRI's competitors the chance to gain a greater foothold in the MBE market. Moreover, the <u>Rodriguez</u> Class was larger than this action, and involved additional defendants.

One objector argues that Defendants' anti-competitive practices allowed them to overcharge for their courses by ten percent and that this should be the real basis for calculating damages. While the amount plaintiff overpaid for the combination of the tied and tying products is one accepted method for calculating damages, <u>In re Visa Check/MasterMoney Antitrust Litigation</u>, 280 F.3d 124, 143 (2d Cir. 2001), the objector offers no evidence to support his claim that Defendants overcharged by ten percent, or that the per capita amount distributed is comparatively unreasonable.

Accordingly, in weighing the <u>Grinnell</u> factors, this Court finds the settlement amount and injunctive relief fair and reasonable.

## II. Certification of the Class

The Court finds the two objections to the proposed class—that it unfairly excludes those who paid for specialty bar review courses, and that it should exclude course takers in states that do not require the MBE—to be meritless. Pursuant to Fed. R. Civ. P. 23, for the reasons set forth on the record on December 7, 2007, this Court certifies the proposed class.

III. <u>Plan of Allocation</u>

"To warrant approval, the plan of allocation must meet the standards by which the . . . settlement was scrutinized — namely, it must be fair and adequate." <u>Maley v. Del Global Techs. Corp.</u>, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). "District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." <u>In re Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotation marks and citation omitted). "[D]istrict courts cannot rely solely on 'the arguments and recommendations of counsel' in evaluating propriety of class settlements." <u>Agent Orange</u>, 818 F.2d at 182 (quoting <u>Plummer v. Chemical Bank</u>, 668 F.2d 654, 659 (2d Cir. 1982)).

Class Counsel's Amended Settlement addressed the primary defect in the allocation plan: that a <u>cy pres</u> distribution would have been substantially greater than the amount distributed to class members in circumstances where the members are relatively identifiable and there is no issue regarding unclaimed funds. <u>See</u> <u>Masters v. Wilhelmina Model Agency, Inc.</u>, 473 F.3d 423, 436 (2d Cir. 2007) ("[C]ourts have utilized <u>Cy Pres</u> distributions where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds.") (internal quotation marks and citation omitted). The Amended Settlement reasonably distributes the entirety of the Fund to Class Members, and provides that only residual sums be distributed to the <u>cy pres</u> fund. Moreover, the Amended Settlement allows claimants from the <u>Rodriguez</u> class, whose contact information is available to Defendants, to receive funds regardless of whether they submitted a claim form. Because the Amended Settlement enables as

many Class Members as possible to receive a fair share of the settlement amount, the allocation plan is approved, and final approval is granted to the Amended Settlement.

IV. Attorneys' Fees and Expenses and Lead Plaintiff's Incentive Award

   A. Attorneys' Fees

Plaintiff's attorneys ("Class Counsel") seek $3,140,375.01 in attorneys' fees, 24.1% of the Fund. This amount would compensate for a total of 2,564.4 billable hours, mostly billed by partners and senior associates. Based on a lodestar of $1,354,516, the $3.14 million award would require a multiplier of 2.32.

In calculating a reasonable attorney's fee, this Court has discretion to choose between the lodestar method and the percentage of recovery method. In re WorldCom, Inc. ERISA Litig., No. 02 Civ. 4816, 2005 WL 3101769, at *7 (S.D.N.Y. Nov. 21, 2005). However, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." WorldCom, 2005 WL 3101769, at *7 (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)). Even where the percentage method is used, the lodestar method remains useful as a "cross-check on the reasonableness of the requested percentage." Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47, 50 (2d Cir. 2000).

Under the percentage of recovery method, the Court considers the Goldberger factors and sets a percentage of the settlement as a fee "based on scrutiny of the unique circumstances of each case." Goldberger, 209 F.3d at 47, 51-53. Under the lodestar method, the Court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the

10

plaintiff and multiplies that figure by an appropriate hourly rate and a multiplier. Goldberger, 209 F.3d at 47. "[A]s a rule, 'post-Goldberger courts ... have generally refused multipliers as high as 2.03.'" In re Merrill Lynch, 2007 WL 4526593, at *21 (quoting In re Twinlab Corp. Sec. Litig., 187 F. Supp. 2d 80, 87 (E.D.N.Y. 2000)). Under either method, the Court is guided by the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger, 209 F.3d at 50.

1. Time and Labor Expended by Counsel

Class Counsel engaged in lengthy and intensive discovery, producing and reviewing hundreds of thousands of documents, and deposing dozens of lay and expert witnesses. Class Counsel briefed and argued motions for summary judgment and a motion for reconsideration. Class Counsel engaged in settlement negotiations, including mediation, and prepared the notification to class members. Class Counsel will also likely spend additional hours after final approval of the settlement working through the claims process with Class Members. This Court finds the time and labor Class Counsel expended to be significant.

2. The Magnitude and Complexities of Litigation

This Court has already noted that antitrust cases are typically complex, and this case has been no exception. However, Plaintiff was presumably aided by the concurrent antitrust action against BAR/BRI in California, which, while based on a different theory, involved overlapping issues. Moreover, Class Counsel has significant experience with class action antirust actions, reducing any need to learn the complexities of antirust law.

11

### 3. Risk of Litigation

The risk of the litigation is "perhaps the foremost factor to be considered in determining whether to award an enhancement." Goldberger, 209 F.2d at 54 (internal citations and quotations omitted). Prior to settlement, the prospects for litigation were less precarious in light of two factors. First, this Court denied Defendants' motion for summary judgment in January 2007. Second, the Rodriguez court approved a settlement in that action in September 2007. While the Rodriguez settlement may not have increased the likelihood that this case would settle, it opened the possibility and reduced the amount of damages that could have been awarded.

### 4. Quality of Representation

Class Counsel have provided extremely high-quality representation.

### 5. The Requested Fee in Relation to Settlement

Although the proposed attorneys' fee of 24.1% of the fund is within the range of fee awards in other recent class actions in this district, see In re Veeco Instruments Inc. Sec. Litig., No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) (awarding attorneys' fees of 30% of a $5.5 million fund), such a fee would be on the high end of the spectrum, see, e.g., Goldberger, 209 F.3d 43 (affirming the district court's award of 4% of a $54 million settlement); In re Elan Sec. Litig., 385 F. Supp. 2d 363 (S.D.N.Y. 2005) (awarding 12% of a $75 million settlement).

### 6. Public Policy Considerations

While public policy favors "the award of reasonable attorney's fees," courts must also "guard against providing a monetary windfall to class counsel to the detriment of the

12

plaintiff class." In re NTL Inc. Sec. Litig., No. 02 Civ. 3013 (LAK), 2007 WL 1294377, at *8 (S.D.N.Y. May 2, 2007) (internal quotations omitted).

Applying the Goldberger factors, this Court concludes that a total attorneys' fee of $2,031,774 is reasonable and appropriate. That fee applies a 1.5 multiplier to the lodestar of $1,354,516 and yields a recovery of approximately 15.6% of the Fund. See, e.g., Denney v. Jenkens & Gilchrist, 230 F.R.D. 317, 352-54, 2005 WL 388562, at *28-29 (S.D.N.Y. Feb. 18, 2005) (reducing multiplier on $81.5 million settlement from 2.04 to 1.5); In re Twinlab Corp. Sec. Lit., 187 F. Supp. 2d 80, 87 (E.D.N.Y.2002) (based upon $26.5 million settlement, reducing multiplier from 3.58 to 1.29). This award should adequately compensate Class Counsel for its time and effort, the risk they faced in this case, and the high quality of their representation. The Court's analysis is buttressed by Class Counsel's acknowledgment that the 1.75 multiplier utilized by Judge Real in Rodriguez is "the closest parallel to this case" for the purpose of determining legal fees. (Tr. at 92-93.) But that was the path-breaking action against BAR/BRI where the possibility for settlement was uncharted.

B. Expenses

Class Counsel additionally seek reimbursement of $109,624.99 in expenses. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." Mitland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993). The Court is satisfied that the expenses incurred were reasonable. Accordingly, this Court grants Class Counsel's motion for reimbursement.

### C. Incentive Award

Class Counsel seeks an "Incentive Award" for Plaintiff of $5,000 pursuant to the Settlement. "The amount of the incentive award is related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911 (HB), 2005 WL 1041134, at *3 (S.D.N.Y. May 5, 2005). Given the time and effort Plaintiff incurred in bringing this suit on behalf of the Class Members, the minimal amount of the award, and the fact that Class Members were notified of—and did not object to—this award, this Court approves it.

### CONCLUSION

For the foregoing reasons, this Court grants final approval to the Amended Settlement and grants in part Class Counsel's motion for attorneys' fees and reimbursement of expenses. A status conference shall take place on November 13, 2008, at 10:30 a.m. to resolve any remaining issues.

Dated: October 22, 2008
    New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*:

Roy A. Katriel, Esq.
The Katriel Law Firm
1101 30th Street NW, Suite 500
Washington, DC 20007

Brian P. Murray, Esq.
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY 10016-1101
*Counsel for Plaintiff*

Steven F. Molo, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Counsel for Defendants